UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEE ANN GASPAR, RICHARD
HETHERINGTON, and DAVID WINCH,

    Plaintiffs,

v.

DAVID DICKS, individually and in his
official capacity as Chief of Police of the
Flint Police Department, and the CITY OF
FLINT,

    Defendants.
_____/

Case No. 08-13707

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 29, 2011.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

On August 27, 2008, Richard Hetherington ("Plaintiff") filed this action against the City of Flint ("the City") and David Dicks, the City's acting police chief, alleging that a policy prohibiting police officers from communicating with the media violated his rights under the First and Fourteenth Amendments to the United States Constitution.[1] This matter is presently before the Court on Defendants' motion in limine, seeking to exclude:

---

[1] Lee Ann Gaspar and David Winch were also plaintiffs in this lawsuit at the time it was filed, but their claims have since been dismissed.

(1) evidence of other civil rights violations allegedly committed by the City and its employees; and (2) the testimony of Dr. Kevin Stackowicz, Plaintiff's treating physician. The matter has been fully briefed, and the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court grants Defendants' motion in part.

## I. Background

At all times relevant to this suit, Plaintiff was employed as a Sergeant by the Flint Police Department ("the Department") and was president of the union representing the Department's Sergeants. In June 2008, the City's Mayor, Donald Williamson, appointed David Dicks to the position of acting police chief. The appointment was controversial because Dicks, a former Flint police officer, lacked supervisory experience and had been terminated from the police force after he was convicted of a criminal driving offense.

A reporter for the *Flint Journal*, a local newspaper, contacted Plaintiff on June 5, 2008, to ask his opinion about the new appointment. The *Journal* published a story that day attributing the following statement to Plaintiff: "Basically (the Flint Police Department is) a laughingstock and appointments like these don't add much more to it."

On June 9, 2008, Dicks issued a new media policy for the Department, stating: "No member of the department shall speak to or release any information regarding the department and/or its employees to the news media." Dicks subsequently ordered Lieutenant Bethany Whaley of Internal Affairs to investigate Plaintiff's comments to the media. Whaley filed a report concluding that because the *Journal* article appeared before the media policy had been issued, Plaintiff had not violated Department policy. She

therefore recommended that any discipline against Plaintiff should not be sustained.  Dicks disagreed with these findings, and on June 12, 2008, issued Plaintiff a two-day suspension without pay.

In August 2008, Committee for a Better Flint, a citizens group, collected signatures for a mayoral recall campaign.  Off-duty police officer Dunell Chaney was among the volunteers, and was allegedly "glared at" by Williamson and Dicks as they drove by one of the group's activities.  Chaney was transferred to a less favorable position two days later.  Plaintiff was also a member of the Committee, and on August 12, 2008, he was contacted by a television reporter asking for comment on the transfer.  In an on-camera interview, Plaintiff stated that he believed the transfer was an act of intimidation that violated the First Amendment.  Dicks requested that Officer Connie Johnson investigate the incident, noting that Plaintiff had called in sick on the day of the interview.  Johnson concluded that Plaintiff had abused sick time and had violated the Department's media policy by speaking on camera.  On August 21, 2008, Plaintiff was notified by mail that his employment was terminated.  The suspension and termination were later rescinded, and Plaintiff was paid his back wages.  Plaintiff filed this suit, seeking emotional distress damages, punitive damages, and attorneys' fees and costs.

## II. Evidence of Other Civil Rights Violations

Defendants assert that Plaintiff has indicated his intent to introduce evidence of civil rights violations committed by City employees other than Dicks.  Plaintiff has allegedly asserted that Mayor Williamson violated the First Amendment on a number of occasions.  In response to Defendants' motion, Plaintiff does not assert that he intends to introduce

any evidence relating to such conduct. Moreover, such evidence would be irrelevant to this suit, which asserts that Dicks disciplined Plaintiff in violation of his constitutional rights. The Court accordingly grants Defendants' motion with respect to evidence of civil rights violations committed by City employees other than Dicks.

Defendants also seek to exclude evidence of alleged civil rights violations committed by Dicks against employees other than Plaintiff. Defendants specifically point to Dicks' discipline of Officers David Winch, Karl Petrich, Keith Speer, and Bethany Whaley. Winch, Petrich, and Speer were reprimanded or suspended in response to statements they made to the media, and Whaley was apparently transferred four times in five months after filing her investigative report indicating that Plaintiff had not violated the Department's media policy. Plaintiff argues that evidence of these disciplinary actions is admissible under Federal Rule of Evidence 404(b) to demonstrate Dicks' intent to retaliate against Plaintiff for speaking to the media. Rule 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . ..

To determine whether evidence is admissible under Rule 404(b), the Court must: (1) identify a proper purpose for which the evidence is offered; (2) determine whether the identified purpose is material, that is, "in issue," in the case; and (3) consider whether the evidence is substantially more prejudicial than probative under Federal Rule of Evidence 403. *United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th Cir. 1996).

Plaintiff has identified a proper purpose for introducing the evidence of disciplinary

actions taken against other police officers. Plaintiff argues that this evidence demonstrates Dicks' intent to retaliate against him for making comments to the media, and Rule 404(b) plainly states that establishing intent or motive is a permitted use of "other acts" evidence.

    The Court concludes that Dicks' intent or motive in disciplining Plaintiff is at issue in this case. To prevail in his First Amendment retaliation claim, Plaintiff must establish: (1) that he engaged in protected speech; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that speech; and (3) that the adverse action was motivated at least in part by Plaintiff's speech. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Dicks maintains that Plaintiff was terminated for abusing sick time; thus, the third element of Plaintiff's claim is at issue. *See* Defs.' Br. 3. Evidence that Dicks disciplined other officers in response to publication of speech critical of him and his conduct would indicate that Dicks had consistently responded to such statements by punishing the speaker. Given that Plaintiff's employment was terminated only a few days after making a statement in the media critical of Dicks, this pattern of discipline suggests that Plaintiff's statements motivated his termination. The Court concludes that the proffered evidence tends to establish a fact at issue in this case.

    The Court next considers whether the evidence is substantially more prejudicial than probative so as to require exclusion under Federal Rule of Evidence 403. As noted above, Winch, Petrich, and Speer were disciplined after making statements to the media. This pattern of discipline in response to public speech is highly probative in establishing Dicks' motive in terminating Plaintiff. The Court also concludes that this evidence would not

5

expose Defendants to the danger of unfair prejudice.  "Evidence that undermines one's defense by virtue of its 'legitimate probative force' does not unfairly prejudice the defendant."  *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009) (quoting *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988)).  Rather, a party is unfairly prejudiced by evidence that tends to suggest a decision on an improper basis.  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).  The Court notes that the discipline against Winch, Petrich, and Speer included suspensions and a reprimand, actions which are certainly less severe in nature than Plaintiff's termination.  Introduction of this evidence therefore does not suggest that the jury should punish Defendants based on discipline imposed on other officers.  This evidence simply indicates that Plaintiff was terminated for reasons other than the alleged abuse of sick time.  The Court accordingly concludes that the balancing of probative value versus unfair prejudice weighs in favor of admitting the evidence of disciplinary actions taken against Officers David Winch, Karl Petrich, and Keith Speer.

Contrary to Defendants' assertion, introduction of this evidence will not result in mini-trials of the illegality of each officer's discipline.  The evidence of the other officers' discipline is being offered to establish that Plaintiff was terminated in retaliation for his statements to the media, rather than for an abuse of sick time.  Even if the disciplinary actions taken against the other officers were legal, they could nonetheless demonstrate a pattern of discipline in response to public statements.  This pattern of discipline and the closeness in time between Plaintiff's statement and his termination tend to establish the motive for Plaintiff's termination.  It is thus irrelevant whether each officer's discipline

was illegal.

The Court next considers the evidence of Whaley's transfer, and concludes that it should not be admitted under Rule 404(b). Whaley made no public statement; she filed an internal investigative report that was never disseminated to the media. Although her report mentions the media policy issued by Dicks, it does so only in noting that the policy would not apply because it was issued after the incident in question. This evidence has only an attenuated connection to the alleged pattern of discipline in response to public statements. As the evidence of Whaley's transfer is not probative of Dicks' intent to retaliate against Plaintiff, the Court concludes that it should not be admitted.

### III. Dr. Stackowicz's Testimony

In their motion, Defendants argued that Plaintiff's treating physician, Dr. Kevin Stackowicz, should not be permitted to testify because Plaintiff failed to file an expert witness report pertaining to his testimony as required by Federal Rule of Civil Procedure 26(a)(2). Plaintiff's response provides that Dr. Stackowicz will not testify as an expert witness, but rather, will testify only concerning facts of which he has personal knowledge obtained through his treatment of Plaintiff. Defendants' reply brief concedes that Dr. Stackowicz "can testify regarding the issues that were necessary and considered during his treatment of Plaintiff," but argues that he should not be allowed to testify regarding the cause of Plaintiff's injuries. Defs.' Reply Br. 3.

An expert witness report "is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment."

7

*Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007).  Courts attempting to determine whether a physician's testimony regarding causation falls into this "core" have considered factors such as: (1) whether the physician reached his conclusion at the time of treatment; (2) whether the opposing party would be surprised by the testimony; (3) whether the condition at issue leaves room for debate as to the specific ailment and its sources; (4) whether the physician relied upon ordinary medical training in drawing his conclusion; and (5) whether the physician will rely on tests, documents, books, videos, or other sources not relied upon during treatment.  *Id.* at 871-72.

  The Court concludes that Dr. Stackowicz should be permitted to testify regarding causation of Plaintiff's injuries to the extent that his conclusions were formed during his treatment of Plaintiff.  The Sixth Circuit has recognized that "doctors may need to determine the cause of an injury in order to treat it."  *Id.* at 870.  "Determining causation may therefore be an integral part of 'treating' a patient."  *Id.*  Plaintiff sought treatment for emotional distress, and it seems unreasonable to expect that a doctor could effectively treat this condition while ignoring the source or sources of Plaintiff's stress.  Dr. Stackowicz's treatment notes demonstrate that he and Plaintiff discussed the sources of Plaintiff's stress, methods for alleviating stress generally, and techniques for coping with particular sources of stress.  There is no unfair surprise here, as Plaintiff's Rule 26 disclosures indicated that Dr. Stackowicz was expected to testify concerning "treatment for mental and emotional distress of Hetherington related to suspension and termination from employment."  This specifically references the alleged causes of Plaintiff's injuries, and to the extent that Dr. Stackowicz's conclusions were formed during treatment, his testimony will be limited to

the scope of Plaintiff's disclosure. Furthermore, there is no indication that Dr. Stackowicz will rely on anything beyond his personal knowledge and ordinary medical training in testifying as to the cause of Plaintiff's injuries. The Court concludes that in this case, Dr. Stackowicz should not be considered an expert witness, and he may testify regarding causation to the extent that his conclusions were drawn during the course of his treatment of Plaintiff.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' motion in limine is **GRANTED IN PART**.

Plaintiff may not introduce evidence of civil rights violations committed by City employees other than David Dicks. He also may not introduce evidence of disciplinary action taken by David Dicks against Bethany Whaley.

Plaintiff may introduce evidence of disciplinary actions taken by David Dicks against David Winch, Karl Petrich, and Keith Speer for the purpose of establishing David Dicks' intent or motive in terminating Plaintiff's employment.

Plaintiff may introduce the testimony of Dr. Kevin Stackowicz regarding his treatment of Plaintiff. Dr. Stackowicz may testify concerning the cause of Plaintiff's injuries to the extent that his conclusions were formed during treatment of Plaintiff.

**SO ORDERED.**

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Copies to:

Gregory T. Gibbs, Esq.
Alec S. Gibbs, Esq.
Michael J. Steinberg, Esq.
Kary L. Moss, Esq.
Muna A. Jondy, Esq.
Sarah C. Zearfoss, Esq.
John A. Postulka, Esq.
Thomas L. Kent, Esq.